# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DOMINICK BURTON,** : | |
|     **Petitioner** : | |
| : | No. 1:15-cr-182-3 |
| v. : | |
| : | (Judge Kane) |
| **UNITED STATES OF AMERICA,** : | |
|     **Respondent** : | |

### MEMORANDUM

Before the Court is pro se Petitioner Dominick Burton ("Petitioner")'s motion to vacate, set aside, or correct his sentenced pursuant to 28 U.S.C. § 2255. (Doc. No. 253.) For the reasons that follow, the Court will dismiss Petitioner's motion as moot.

## I.  BACKGROUND

On August 26, 2015, a grand jury returned an indictment charging Petitioner with conspiracy to manufacture, distribute, and possess with the intent to distribute at least 100 grams of heroin, cocaine hydrochloride, and marijuana; and possession with the intent to distribute at least 100 grams of heroin, cocaine hydrochloride, and marijuana. (Doc. No. 1.) Alan M. Ross ("Attorney Ross") represented Petitioner, who entered into plea negotiations with the Government, resulting in a plea agreement. (Doc. No. 144.) The plea agreement called for Petitioner to plead guilty to Count Four of the indictment, charging him with possession with intent to distribute at least 100 grams of heroin, cocaine hydrochloride, and marijuana. (Id. ¶ 1.) The plea agreement indicated that the indictment would "be amended at the time of the guilty plea to remove the reference to any particular amount of heroin." (Id.) In the plea agreement, Petitioner and the Government stipulated that "the amount of heroin for guideline purposes is at least 20 but no more than 40 grams." (Id. ¶ 11.) The parties further stipulated that if Petitioner was "a category I offender, the [guidelines] range before acceptance of responsibility is 21-27

months.  With 3 levels off for acceptance of responsibility the advisory imprisonment range is 12-18 months.  If he is a category II offender the corresponding ranges from those offense levels would apply."  (Id.)

On September 15, 2016, Petitioner appeared before Magistrate Judge Martin C. Carlson for a change of plea hearing.  (Doc. No. 157.)  Magistrate Judge Carlson concluded that Petitioner was fully competent to enter an informed plea and understood the consequences of his plea, that he was pleading guilty knowingly and voluntarily, and that the plea was supported by an independent basis in fact.  (Id.)  On that date, Magistrate Judge Carlson recommended that this Court accept Petitioner's guilty plea.  (Id.)  On October 4, 2016, the Court adopted Magistrate Judge Carlson's Report and Recommendation and accepted Petitioner's guilty plea.  (Doc. No. 167.)

The United States Probation Office subsequently prepared a Presentence Report ("PSR"), concluding that Petitioner's base offense level was 30 because Petitioner was responsible for twenty (20) grams of heroin, 10.9 kilograms of marijuana, 360 grams of crack cocaine, and .16 grams of cocaine hydrochloride.  (Doc. No. 199 ¶ 19.)  The Probation Office added two (2) levels pursuant to United States Sentencing Guidelines ("USSG") § 2D1.1(b)(1), stating "[a]lthough the Government advised that there is no evidence to connect the gun found in the defendant's vehicle to drug distribution, surveillance operations of Mr. Burton's vehicle observed him meeting with individuals in parking lots for short periods of time, which is consistent with drug trafficking."  (Id. ¶ 20.)  With a three (3)-level reduction for acceptance of responsibility, Petitioner's total offense level was 29.  (Id. ¶¶ 26-28.)  Petitioner's criminal history placed him within category II.  (Id. ¶ 37.)  The Probation Office determined that with a

total offense level of 29 and a criminal history category of II, the Sentencing Guidelines called for 97 to 121 months of incarceration. (Id. ¶ 56.)

Attorney Ross filed two (2) objections to the PSR. (Doc. No. 200.) First, he asserted that the total offense level should be 13 because Petitioner's co-defendant "did not supply him with one pound of marijuana and 15 grams of crack cocaine weekly for a period of six months." (Id. at 1.) The Probation Office stood by the PSR, but did recognize that the plea agreement contained the parties' stipulation that the amount of heroin attributable to Petitioner was at least twenty (20) grams, but no more than forty (40) grams. (Id.) The Probation Office further noted that the Government could not argue against the stipulation without being in violation of the plea agreement. (Id.) The Probation Office noted that if the Court sustained Petitioner's objection, "the advisory guidelines custody range would be 21 to 27 months based on a total offense level of 15 and a criminal history category of II." (Id. at 2.) Attorney Ross also objected to the two (2)-level enhancement under § 2D1.1(b)(1) for possession of a firearm in connection with drug trafficking. (Id.) The Probation Office stood by the PSR, noting that it was not "clearly improbable" that the firearm was connected to the offense. (Id.) The Probation Office noted that if the Court sustained Petitioner's objection, "the advisory guideline custody range would be 78 to 97 months based on a total offense level of 27 and a criminal history category of II." (Id.) If the Court sustained both objections, "the advisory guideline custody range would be 15 to 21 months based on a total offense level of 13 and a criminal history category of II." (Id.)

The parties appeared before the Court for Petitioner's sentencing on January 18, 2017. (Doc. No. 214.) The Court sentenced Petitioner to twenty-seven (27) months' incarceration, to be followed by three (3) years of supervised release. (Id. at 2-3.) On January 27, 2017, the Court entered an amended judgment to correct a clerical error regarding Petitioner's assigned

United States Marshal number. (Doc. No. 216.) Petitioner did not appeal to the United States Court of Appeals for the Third Circuit.

On February 9, 2018, Petitioner, proceeding pro se, filed the instant motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, requesting that his sentence be vacated and corrected based upon the Supreme Court's decision in Nelson v. Colorado, 137 S. Ct. 1249 (2017), alleging that the two (2)-point enhancement for possession of a firearm during drug trafficking was a violation of his due process rights and referencing a "presumption of [innocence]." (Doc. No. 253 at 1.) Petitioner was released from incarceration on January 31, 2019 and is currently serving his three (3)-year term of supervised release. (Doc. No. 256.) In an Order dated November 8, 2019, the Court directed the Government to respond to Petitioner's motion. (Doc. No. 260.) On November 26, 2019, the Government filed its brief in opposition, alleging that Petitioner's § 2255 motion is time-barred and that his claim lacks merit. (Doc. No. 262.) To date, Petitioner has filed neither a reply brief nor an extension of time to do so. Accordingly, because the time period for filing a reply brief has expired, Petitioner's § 2255 motion is ripe for resolution.

## II.   LEGAL STANDARD

Under 28 U.S.C. § 2255(a), a federal prisoner may file a motion requesting that the sentencing court vacate, set aside, or correct his sentence on the basis "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the [C]ourt was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." See 28 U.S.C. § 2255(a). However, Section 2255 does not afford a remedy for all errors that may have been made at trial or during sentencing. See United States v. Essig, 10 F.3d 968, 977 n.25 (3d Cir. 1993) (citing

4

United States v. Addonizio, 442 U.S. 178, 185 (1979)). Rather, Section 2255 is implicated only when the alleged error raises "a fundamental defect which inherently results in a complete miscarriage of justice." See Addonizio, 442 U.S. at 185.

## III. DISCUSSION

### A. Timeliness of Petitioner's § 2255 Motion

The Government first asserts that Petitioner's § 2255 motion is untimely. (Doc. No. 262-at 2.) The Court, however, does not agree with the Government's argument. Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petitioner has one year from the time her conviction becomes final to file a Section 2255 motion. See 28 U.S.C. § 2244. Specifically, the one-year statute of limitations begins to run on any one of the following dates:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented by making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Id. § 2255(f).

As noted above, the one-year limitations period generally begins to run on "the date on which the judgment of conviction becomes final." See id. § 2255(f)(1). In this context, a judgment of conviction becomes final on the date on which the time for filing a timely direct appeal expires. See Kapral v. United States, 166 F.3d 565, 577 (3d Cir. 1999). Here,

Petitioner's amended judgment of conviction was entered on January 27, 2017.[1] (Doc. No. 216.) Petitioner, therefore, had fourteen (14) days to file a notice of appeal. See Fed. R. App. P. 4(b)(1)(A)(i). Petitioner did not appeal, meaning that his judgment of conviction became final on February 10, 2017. Therefore, Petitioner had one year from February 10, 2017, or until February 12, 2018, to file a timely § 2255 motion. Petitioner filed his § 2255 motion on February 9, 2018. (Doc. No. 253.) Thus, Petitioner's § 2255 motion is timely, and the Court will, therefore, consider the merits of his claim.

**B.      Merits of Petitioner's Claim**

Petitioner requests that his sentence be vacated and corrected based upon the Supreme Court's decision in Nelson v. Colorado, 137 S. Ct. 1249 (2017), alleging that the two (2)-point enhancement for possession of a firearm during drug trafficking was a violation of his due process rights and referencing a "presumption of [innocence]." (Doc. No. 253 at 1.) In Nelson, the Supreme Court held unconstitutional a Colorado statute that had required defendants whose convictions had been reversed or vacated to prove their innocence by clear and convincing evidence to obtain a refund of any costs, fees, and restitution paid in conjunction with the invalid conviction. See Nelson, 137 S. Ct. at 1252, 1254. The Supreme Court concluded that the statute was unconstitutional because "it violated the right to procedural due process by placing an evidentiary burden on the defendants to prove their innocence when the presumption of

---

[1] This Court has previously relied upon the date when an amended judgment is entered to calculate when a petitioner's judgment of conviction became final for purposes of § 2255(f)(1). See McFarland v. Caraway, No. 1:14-cv-112, 2014 WL 5393106, at *2 (M.D. Pa. Oct. 23, 2014). Other courts have done the same. See, e.g., Johnson v. United States, 457 F. App'x 462, 466 (6th Cir. 2012); Patnesky v. United States, Nos. 2:13-cr-212, 2:19-cv-560, 2019 WL 2122896, at *2 (S.D. Ohio May 15, 2019); United States v. Juarez-Sanchez, Nos. 1:15-cr-213-AA, 1:16-cv-1378-AA, 2017 WL 1363310, at *3 (D. Or. Apr. 11, 2017); Keathley v. United States, Nos. 13-15300, 04-80335, 2016 WL 7242135, at *1 (E.D. Mich. Dec. 15, 2016); United States v. McKesson, No. 2:08-cr-462 GEB AC P, 2015 WL 2091470, at *1 (E.D. Cal. May 4, 2015).

innocence rested at the foundation of the criminal justice system." See Walker v. United States, Nos. 3:18-cv-332, 3:13-cr-187-1, 2019 WL 4386742, at *3 (S.D. W. Va. Aug. 22, 2019), report and recommendation adopted, 2019 WL 4389037 (S.D. W. Va. Sept. 12, 2019). The decision in Nelson, however, has no bearing on the application of § 2D1.1(b)(1). See id. (noting that the Nelson decision "does not touch on sentencing considerations, sentencing guidelines, or relevant conduct in sentencing"); see also United States v. Walters, No. CR 15-91-BLG-SPW, 2018 WL 3625772, at *2 (noting that the decision in Nelson "has no bearing on § 2D1.1(b)(1) of the guidelines"). Rather, Petitioner appears to "rely on the statement that 'the presumption of their innocence was restored' after the convictions were erased, [Nelson, 137 S. Ct. at 1255], to extrapolate the proposition that if he was not convicted of [any offense related to possession of a firearm], he should enjoy a presumption of innocence that would prevent application of relevant conduct and other Sentencing Guidelines enhancements." See Reese v. United States, No. 2:16-cv-410-WKW, 2019 WL 4621674, at *12 n.9 (M.D. Ala. Aug. 27, 2019), report and recommendation adopted, 2019 WL 4621983 (M.D. Ala. Sept. 23, 2019). Thus, Nelson has no bearing on whether the enhancement in § 2D1.1(b)(1) was properly applied to Petitioner's Sentencing Guidelines range.

In any event, Petitioner's release from incarceration renders his challenge to the applicability of § 2D1.1(b)(1) moot. Because "mootness is jurisdictional, [the Court] cannot address the merits of [Petitioner's] challenge . . . unless [it] determines that his [claim] presents a live case or controversy under Article III, § 2 of the Constitution." See United States v. Peppers, 779 F. App'x 934, 936 (3d Cir. 2019). "The case or controversy requirement continues through all stages of federal judicial proceedings, trial and appellate, and requires that parties have a

personal stake in the outcome." Burkey v. Marberry, 556 F.3d 142, 147 (3d Cir. 2009). As the Third Circuit stated in Peppers:

> [m]ootness does not arise when a defendant who remains imprisoned challenges his conviction or sentence, nor when a defendant "who is serving a term of supervised release elects to challenge only his sentence of supervised release." In those instances, "[a] defendant enjoys a presumption of collateral consequences." But, when a defendant who is on supervised release challenges "only his completed sentence of imprisonment," [the Court] will not presume collateral consequences, and the appellant must set them forth.

Peppers, 779 F. App'x at 936 (internal citations omitted). To determine whether collateral consequences are sufficient to establish a live case or controversy, courts assess "the 'likelihood' that a favorable decision would redress the injury or wrong." See Burkey, 556 F.3d at 148.

In the instant case, Petitioner challenges the applicability of § 2D1.1(b)(1) to his sentence, presumably suggesting that without the application of the two (2)-level increase, his Sentencing Guidelines range would have called for a period of incarceration lower than the twenty-seven (27) months imposed by the Court. Petitioner's challenge, however, goes toward the sentence of imprisonment he has already served; he does not challenge his three (3)-year term of supervised release. Petitioner does not assert any collateral consequences, and the Court does not discern any. Even assuming arguendo that § 2D1.1(b)(1) was wrongfully applied to enhance Petitioner's period of incarceration, the Court could not credit any overserved time to his period of supervised release because the Court imposed upon Petitioner the statutorily minimum required period of three (3) years. See 21 U.S.C. § 841(b)(1)(C) (noting that "any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least 3 years in addition to such term of imprisonment"). Moreover, any argument that any overserved time could be applied to a potential violation of supervised release presents an "insufficient collateral consequence." See

Peppers, 779 F. App'x at 938 (rejecting the same argument); see also United States v. Jackson, 523 F.3d 234, 240 (3d Cir. 2008) (noting that "the possible collateral consequence of a sentencing error impacting a future federal criminal conviction and sentence . . . has been discredited by the Supreme Court and other circuits"); United States v. Kissinger, 309 F.3d 179, 182 (3d Cir. 2002) ("This collateral consequence is insufficient to breathe life into the mooted controversy because the possible effect of an increased sentence depends on Kissinger's subsequent commission and conviction of a crime."). Thus, because no collateral consequences resulting from any alleged sentencing error are adequate to meet Article III's injury-in-fact requirement, Petitioner's § 2255 motion is subject to dismissal for being moot.

### C. Evidentiary Hearing

Section 2255(b) advises that a petitioner may be entitled to a hearing on his motion. The decision to hold a hearing is wholly within the discretion of the district court. See Gov't of Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989). Where the record affirmatively indicates that a petitioner's claim for relief is without merit, a court may decide the claim on the record without a hearing. See Gov't of Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985). In the instant case, as discussed above, the Court finds that "the motion and files and records of this case show conclusively that the movant is not entitled to relief." See United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005) (quoting Forte, 865 F.2d at 62). Accordingly, the Court finds no reason to hold an evidentiary hearing in this matter.

### D. Certificate of Appealability

In proceedings brought under Section 2255, a petitioner cannot appeal to the circuit court unless a certificate of appealability ("COA") has been issued. A court may not issue a COA unless "the applicant has made a substantial showing of the denial of a constitutional right." See

28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322 (2003). Moreover,

> [w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

Slack v. McDaniel, 529 U.S. 473, 484 (2000). Here, the Court concludes that jurists of reason would not find the disposition of this case debatable. Accordingly, the Court will not issue a COA.

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss Petitioner's § 2255 motion (Doc. No. 253) as moot and will not issue a COA. An appropriate Order follows.